# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|                                   |     |                                      |
| --------------------------------- | --- | ------------------------------------ |
|                                   | )   |                                      |
| **UNITED STATES OF AMERICA,**     | )   |                                      |
|                                   | )   |                                      |
| **v.**                            | )   | **Criminal Action No. 18-246 (RMC)** |
|                                   | )   |                                      |
| **LORENZO BELTON,**               | )   |                                      |
|                                   | )   |                                      |
| **Defendant.**                    | )   |                                      |
|                                   | )   |                                      |

## MEMORANDUM OPINION

During a routine traffic stop, a veteran police officer observed the end of a knotted plastic bag sticking out of the groin area of the driver's pants. The officer immediately believed that the plastic bag contained drugs. The question is whether the totality of circumstances provided probable cause to arrest the driver and conduct a search incident to arrest. The government argues yes; the defense vehemently disagrees. Defendant moves to suppress both the drugs and money found on the driver and the handgun and ammunition recovered from the center console in a search of the vehicle.

## I.  FACTS

On July 4, 2018, shortly after 7:00 pm, Lorenzo Belton was driving a Toyota Avalon when he was observed by Officers Joseph, Ledesma, Murrell, and Green of the District of Columbia Metropolitan Police Department (MPD) to accelerate suddenly on Parkwood Road N.W., D.C. Tr. 69.[1] The officers' attention was drawn by the sudden burst of speed, but they also noted very dark-tinted windows on the Avalon and followed it in a marked police car. *Id.*

---

[1] Officer Joseph testified both that when he first saw the Avalon, "it was driving at a high rate of speed," Tr. 18, and that "it was stationary, then it drove away." Tr. 19. The difference is immaterial; its speed caught the officers' attention and contributed to their decision to initiate a traffic stop.

After a few blocks, the officers pulled over the Avalon without incident.  Tr. 25-26.  Officers

Joseph and Ledesma were outfitted with body-worn cameras, which captured audio and video

recordings of the subsequent traffic stop.[2]

Officer Joseph approached the driver's side window and spoke with the driver, a

man later identified as Lorenzo Belton.  MHV-1A at 23:14:04-08.[3]  None of the officers knew

Mr. Belton or his passenger, Ivan Taylor.  Tr. 77-78.  Officer Joseph explained to the occupants

that they had been pulled over because of the vehicle's window tint and that Mr. Belton was

driving "pretty quick."  MHV-1A at 23:14:14-14:23; *see also* Tr. 21.  Upon request, Mr. Belton

handed his license and registration to Officer Joseph, stating that he did not have proof of

insurance in the vehicle.  MHV-1A at 23:14:23-37.  Standing outside the driver's window and

looking down at Mr. Belton, Officer Joseph saw plastic protruding from the waistband of Mr.

Belton's pants, consistent with "the end of [a] sandwich bag."  Tr. 28.[4]  The plastic was "coming

from his waist under his, like I guess his belly button," Tr. 28, with the "top portion crumpled.

---

[2] Upon activation of a body-worn camera, the camera retains video, but not audio, for
approximately two minutes before activation.  Tr. 24.  This prior footage from Officer Joseph's
body-worn camera shows the police vehicle driving and making a series of turns as it followed
the Avalon.  Officer Joseph was seated in the front passenger's seat.  *See* MHV-1A at 23:12:05-
14:04.

[3] Citations to body-worn camera footage reflect the electronic file name as provided to the Court
and the footage timestamp, which is based on "Zulu" time—four hours ahead of local time in
D.C.  Tr. 23-24.  The body-worn cameras were clipped to the officers' vests, at about mid-chest
height.  Tr. 37-38.

[4] Counsel for Mr. Belton argues that Officer Joseph could not have seen any plastic protruding
from Mr. Belton's waistband due to the position of Mr. Belton's body.  This argument builds on
Mr. Belton's asserted weight, height, and stomach size.  Tr. 99-101.  The Court credits Officer
Joseph's testimony that he saw some plastic material, with the appearance of a knotted sandwich
bag, protruding from the center of Mr. Belton's waist area.  The officer's testimony—and his
actions at the time—are entirely consistent.  In addition, Mr. Belton's physique does not really
support defense counsel's argument.  *See* Def.'s Suppl. Ex. 11, Front-View Photograph of
Lorenzo Belton [Dkt. 14-10].

Kind of knotted I guess."[5]  *Id.*  Because he could see only a few inches of the plastic bag, the officer could not see what, if anything, it contained.  Tr. 31.[6]  It was not protruding from pant pockets but from the center of Mr. Belton's waistband.  *Id.*  Based on his training, and his patrol experience in the same neighborhood in prior years, Officer Joseph immediately thought that Mr. Belton had a plastic bag containing drugs hidden in his groin area.  Tr. 31 ("I immediately thought it was drugs.").

After briefly looking at Mr. Belton's identification, Officer Joseph asked him to step out of the vehicle, so he could not drive away.  MHV-1A at 23:14:37-40; Tr. 33.  Opening the driver's door, Officer Joseph said, "You're not in any trouble right now."  *Id.*  Mr. Belton asked why he needed to get out of the car and Officer Joseph responded, "Because I asked you to.  Could you just step out?"  MHV-1A at 23:14:40-44.  Mr. Belton did so and Officer Joseph reached for and held Mr. Belton's right wrist with his left hand.  MHV-2A at 23:14:52.  The officer then asked, "What's in your pants? I can see you stuffed something in your pants," as he immediately placed his right hand on Mr. Belton's stomach and waistband.  MHV-1A/MHV-2A at 23:14:50-57.  Mr. Belton answered, "I didn't stuff anything."  MHV-1A/MHV-2A at 23:14:54-55.  Officer Joseph said, "I can see the bag right here.  What is that?"  MHV-1A/MHV-2A at 23:14:55-57.  Mr. Belton said, "See what bag?"  MHV-1A/MHV-2A at 23:14:55-56.  Officer Joseph responded, "This bag right here.  What is that?"  MHV-1A/MHV2-A at 23:14:57-58.  During this exchange, Officer Joseph "pushed back" Mr. Belton's stomach and "grabbed the

[5] The plastic is not visible in any of the body-worn camera footage.  *See, e.g.*, MHV-1A at 23:14:48-49; MHV-2A at 23:14:50-52.  The Court finds this unremarkable, as Officer Joseph's body-worn camera faced forward from the center of his chest, not downward to view inside the stopped car.  Officer Ledesma came from behind Officer Joseph and could not see into the car.  MHV-2A at 23:14:40-52.

[6] After Officer Joseph demonstrated the length of visible plastic, the Court estimated it to be two to three inches, an estimate neither party contested.  *See* Tr. 30.

plastic," removing a plastic bag from Mr. Belton's waistband. Tr. 41. He then said, "Oh, yeah. Cuff him," MHV-1A/MHV-2A at 23:15:04-05, and Mr. Belton was placed in handcuffs. Officer Joseph acknowledged that he began to touch Mr. Belton's body before Mr. Belton responded to his first question. Tr. 41.

The plastic bag removed from Mr. Belton's person contained three separate bags: one with seven small zips of a white powder substance that field-tested positive for cocaine; one with 18 plastic twists of a rock-like substance that field-tested positive for cocaine (suspected crack); and one that contained 11 zips of a brown powder substance that field-tested positive for heroin. Gov't's Opp'n to Def.'s Mot. to Suppress Tangible Evidence (Gov't's Opp'n) [Dkt. 7] at 4 n.5. A subsequent search of the Avalon revealed a 9mm semi-automatic handgun loaded with 25 rounds of ammunition in the center console of the vehicle.[7] Id. at 4 n.6; Tr. 43; Gov't's Suppl. Exs. 4-5. Approximately $947 in currency was also found on Mr. Belton's person. Gov't's Opp'n at 4 n.6. When Mr. Belton indicated that the items in the Avalon were his, Mr. Taylor, his passenger, was released. Id.

At the motions hearing on this matter, Officer Joseph testified that in his decade of experience drug dealers "usually" keep their "stash" in "[t]heir privates. Some in the front, some keep it in the back, and under their testicles." Tr. 31-32. He also testified, based on his training and experience, that drug dealers "commonly" use "plastic, plastic bags, plastic sandwich bags," to hold their drugs. Id. at 32.

Mr. Belton now moves to suppress the drugs, the gun, the ammunition, and the money, arguing that his arrest was not supported by probable cause and the evidence resulting

---

[7] In its initial and supplemental briefs, the government states that the gun was found in the glove compartment. Gov't's Opp'n at 4; Gov't's Suppl. at 6. Officer Joseph's testimony and the exhibits introduced at the motions hearing, including a photograph of the gun in situ, show that the gun was found in the center console of the vehicle. See Tr. 43; Gov't's Suppl. Exs. 4-5.

from the search incident to that arrest was recovered through an unlawful search.  The government opposes.[8]

Following the hearing on Defendant's motion, the parties asked for, and received, time to further brief the issues.[9]

## II.  LEGAL STANDARD

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, *Mapp v. Ohio*, 367 U.S. 643 (1961), states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  The effect of the Fourth Amendment is that warrantless searches and seizures are presumed unreasonable and law enforcement officers must usually obtain a judicial warrant before searching a person or a person's property for evidence of criminal wrongdoing.  *See Riley v. California*, 134 S. Ct. 2473, 2482 (2014); *see also Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (explaining that probable cause protects "citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime," while giving "fair leeway for enforcing the law in the community's protection") (citation omitted); *see also United States v. Wills*, 316 F. Supp. 3d 437, 444 (D.D.C. 2018).

---

[8] *See* Mot. to Suppress Tangible Evidence and Mem. of P. & A. in Supp. Thereof [Dkt. 6]; Gov't's Opp'n to Def.'s Mot. to Suppress Tangible Evidence (Gov't's Opp'n) [Dkt. 7].

[9] *See* Post-Hearing Mem. of P. & A. in Supp. of Def.'s Mot. to Suppress Evidence (Def.'s Suppl.) [Dkt. 15]; Def.'s Suppl. Exs. [Dkt. 14-1 to 14-14]; Gov't's Post-Hearing Supplemental Br. in Opp'n to Def.'s Mot. to Suppress Tangible Evidence (Gov't's Suppl.) [Dkt. 17]; Gov't's Suppl. Exs. [Dkt. 18-1]; Reply to Gov't's Opp'n to Def.'s Post-Hearing Mem. of P. & A. in Supp. of Def.'s Mot. to Suppress Evidence [Dkt. 20].

However, a warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause. *United States v. Watson*, 423 U.S. 411, 421-24 (1976). If there is probable cause for an arrest, the arresting officer can conduct a full search of the arrestee's person. *United States v. Robinson*, 414 U.S. 218, 224-25 (1973) ("It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment."); *see also United States v. Short*, 570 F.2d 1051, 1054-56 (D.C. Cir. 1978) (noting that "what the officer carried on was the kind of full search that depends on the justification of an arrest").

Where a warrantless arrest is not supported by probable cause, the evidence resulting from a search incident to that arrest is subject to suppression. Though the text of the Fourth Amendment does not explicitly provide for the suppression of evidence, the "exclusionary rule" has developed to give force to the prohibition on unreasonable searches and seizures. *See Davis v. United States*, 564 U.S. 229, 236 (2011). The exclusionary rule bars the prosecution from introducing evidence obtained through a violation of the Fourth Amendment. *Id*. at 231; *see also Wong Sun v. United States*, 371 U.S. 471, 485 (1963) ("The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion."). Its purpose is to "compel respect for the constitutional guaranty" by deterring future Fourth Amendment violations. *Davis*, 564 U.S at 236-37; *see also Penn. Bd. of Prob. and Parole v. Scott*, 524 U.S. 357, 363 (1998) ("The exclusionary rule is . . . a judicially created means of deterring illegal searches and seizures.").

However, a Fourth Amendment violation does not necessitate "reflexive" application of the exclusionary rule. *Davis*, 564 U.S. at 237-38; *see also Arizona v. Evans*, 514

U.S. 1, 10-11 (1995); *United States v. Leon*, 468 U.S. 897, 906 (1984) ("Whether the exclusionary sanction is appropriate in a particular case, . . . is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.'") (citing *Illinois v. Gates*, 462 U.S. 213, 223 (1983)). For application of the exclusionary rule to be appropriate, "the deterrence benefits of suppression must outweigh its heavy costs." *Davis*, 564 U.S. at 237.

The Federal Rules of Criminal Procedure provide that a defendant may move to suppress evidence in the court where the trial will occur. *See* Fed. R. Crim. P. 41(h). Mr. Belton properly has done so here before trial, in accord with Rule 12. *See* Fed. R. Crim. P. 12(b)(3)(C).

## III. ANALYSIS

### A. The Traffic Stop

To start at the beginning, Mr. Belton does not dispute the propriety of the traffic stop for dark window tint and "pretty quick" speed. While no speeding ticket was issued, the sudden speed of the Avalon in a residential neighborhood legitimately brought the car to the attention of the officers and its window tint indeed proved to be beyond the legal limit in the District of Columbia. *See* D.C. Code § 50-2207.02 (prohibiting front side window tint that allows less than 70% light transmittance); MHV-2B at 23:22:33-23:08 (body-worn camera footage showing Officer Ledesma using a tint meter to confirm that the window tint was darker than the legal limit); *see also* MHV-1A at 23:23:03-13 (similar footage from Officer Joseph's body-worn camera); Tr. 45-47; Gov't's Suppl. Ex. 7 (displaying tint meter reading 14% light transmittance).

"For the duration of the traffic stop . . . a police officer effectively seizes 'everyone in the vehicle,' the driver and all passengers." *Arizona v. Johnson*, 555 U.S. 323, 326 (2009) (quoting *Brendlin v. California*, 551 U.S. 249, 255 (2007)). That "investigatory stop,"

analogous to a *Terry* stop,[10] is lawful "pending inquiry into a vehicular violation." *Arizona v. Johnson*, 555 U.S. at 326. Officer Joseph then lawfully asked Mr. Belton to get out of the car under the "rule of *Pennsylvania v. Mimms*, 434 U.S. 106 (1977) (*per curiam*), that a police officer may as a matter of course order the driver of a lawfully stopped car to exit his vehicle . . . ." *Maryland v. Wilson*, 519 U.S. 408, 410 (1997).

Officer Joseph testified that he participated in the traffic stop of the Avalon due to the vehicle's window tint and the "high rate of speed" at which it was traveling on a residential street. Tr. 21. The Court finds that the traffic stop was objectively reasonable under the circumstances: from his own sight, the officer reasonably believed that the window tint violated local law (as indeed it did). *See United States v. Hill*, 131 F.3d 1056, 1059 (D.C. Cir. 1997) ("It is well-settled that in evaluating the reasonableness of a particular traffic stop, it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?") (internal quotation marks and citations omitted). The sudden speed of the Avalon contributed nothing to the legitimacy of Officer Joseph's conduct after the stop, since it only attracted the officers' initial attention. Officer Joseph testified that the window tint did not prompt him to ask Mr. Belton to get out of the car, Tr. 51, but agreed that the mere

---

[10] *Terry v. Ohio*, 392 U.S. 1 (1968), allows police officers to detain a person briefly, and to frisk for weapons, based on reasonable suspicion of criminal activity. "Reasonable suspicion" requires "specific and articulable facts" that indicate that the person is or is about to be engaged in criminal activity and requires less than probable cause. Probable cause to search exists "where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). Probable cause is a higher standard than that required for *Terry* stops. *Id*. (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). Should an officer conducting a *Terry* stop and accompanying frisk identify by touch an object that s/he immediately recognizes as a weapon or contraband, s/he may seize it without violating the Fourth Amendment. *See Minnesota v. Dickerson*, 508 U.S. 366, 375-76 (1993). However, the officer cannot manipulate the object if s/he does not immediately know what it is. *Id*.

14% light transmittance through its windows ensured he could not see through them unless they were open. Tr. 56. The government argues that tinted windows obscuring views of any activities inside the vehicle could be useful to drug dealers. Gov't's Suppl. at 9.

### B. The Arrest and Search

"Probable cause exists if a reasonable and prudent police officer would conclude from the totality of the circumstances that a crime has been or is being committed." *United States v. Holder*, 990 F.2d 1327, 1328 (D.C. Cir. 1993).[11] In analyzing the totality of the circumstances, probable cause is properly viewed through the common-sense lens and experience of law enforcement officers in the field. *United States v. Laws*, 808 F.2d 92, 103-04 (D.C. Cir. 1986) ("In assessing probable cause, as the Supreme Court has declared, the evidence . . . collected must be seen and weighed not in terms of analysis by scholars, but as understood by those versed in the field of law enforcement.") (internal quotation marks and citations omitted); *United States v. Lucas*, 778 F.2d 885, 887 (D.C. Cir. 1985) ("The circumstances must be viewed from the perspective of a reasonable, cautious police officer in light of the officer's experience and training."). Further, "a police officer may draw inferences based on his own experience in deciding whether probable cause exists," *Ornelas*, 517 U.S. at 700, including inferences "that might well elude an untrained person." *United States v. Cortez*, 449 U.S. 411, 418 (1981).

---

[11] In its initial opposition to Defendant's motion to suppress, the government referenced the plain view exception to the requirement of a warrant and suggested that the exception justified the seizure of the bag in Mr. Belton's waistband. *See, e.g., Texas v. Brown*, 460 U.S. 730, 743 (1983). That argument was not advanced in the government's post-hearing brief, which relied on the totality of the circumstances as providing probable cause for an arrest and/or search. Failing full briefing and argument, the Court will not decide whether the plastic bag in the indiscreet and suspicious location of Mr. Belton's groin was "distinctive" enough to "speak volumes as to its contents—particularly to the trained eye of the officer" to permit warrantless seizure. *Id*. at 743.

It is not necessary to eliminate every innocent explanation for a given set of facts for probable cause to exist. *Illinois v. Gates*, 462 U.S. at 235 n.13 (noting "innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to *sub silentio* impose a drastically more rigorous definition of probable cause . . . ."); *see also Sennett v. United States*, 667 F.3d 531, 536 (4th Cir. 2012) ("The test is not whether the conduct under question is consistent with innocent behavior; law enforcement officers do not have to rule out the possibility of innocent behavior.") (citation omitted).

Thus, the critical question is whether, in light of his ten years of experience as an MPD officer: 1) the lawful and direct observation by Officer Joseph of two to three inches of the end (crumpled or knotted) of a plastic sandwich bag, 2) in the groin area (mid-center of the waistband) of Mr. Belton, 3) while in a vehicle lawfully stopped for heavily tinted windows, and 4) in an area where Officer Joseph had previously patrolled and known as an area high in crime and drug trafficking, provided probable cause for him to arrest Mr. Belton as he exited his vehicle.

Officer Joseph testified that he had worked in MPD's Fourth District, including the area of 14th and Parkwood Streets, N.W., D.C. until 2013. Tr. 9-13. At that time, he knew it as a "hot block" with "a lot of drug activity." Tr. 12. Thereafter, he transferred to the Gun Recovery Unit. The Court finds his testimony fully credible although dated, since he has not been assigned to the area since 2013.[12] Nonetheless, the Court finds that Officer Joseph's reliance on his own experiences reasonably contributed to his actions in arresting Mr. Belton in

---

[12] Supportive contemporaneous information Officer Joseph acquired from fellow officers after Mr. Belton's arrest is irrelevant to the question of probable cause at the time of the arrest. *See* Tr. 14.

the absence of evidence, beyond lawyer arguments, that the area had materially improved with respect to the prevalence of drugs and drug sales.

Defendant argues that plastic material—even when protruding from the center of a waistband—is consistent with many other objects, including colostomy bags, adult diapers, food wrappers, or pouches worn under clothing to conceal valuables. *See* Def.'s Suppl. at 12; *see also Commonwealth v. Alvarado*, 651 N.E.2d 824, 830 (Mass. 1995) (stating that "the limited view of a glassine bag, the contents of which were not discernible, and [defendant's] furtive gesture in concealing it in his pants, were insufficient" to provide probable cause for arrest). The Court is not persuaded that potential innocent explanations for the bag in Mr. Belton's groin area outweigh the reasonableness of the officer's reliance on his experience and training to identify it as contraband from its appearance and very personal hiding spot. *See United States v. Gagnon*, 373 F.3d 230, 236 (2d Cir. 2004) ("[T]he fact that an innocent explanation may be consistent with the facts as alleged . . . does not negate probable cause.") (citation omitted); *United States v. Funches*, 327 F.3d 582, 587 (7th Cir. 2003) (finding "the mere existence of innocent explanations does not necessarily negate probable cause").

The government proffers a series of "plain touch" cases in which the D.C. Circuit has found that officers had probable cause to seize contraband when its nature was immediately apparent upon a frisk. *See United States v. Blake*, 55 F.3d 684 (D.C. Cir. 1995) (unpublished)[13]; *United States v. Ashley*, 37 F.3d 678 (D.C. Cir. 1994); *United States v. Rodney*, 956 F.2d 295 (D.C. Cir. 1992). The Court does not consider these precedents, as Officer Joseph did not frisk

---

[13] The Court notes that this unpublished decision contains a Federal Reporter citation because it is included in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.

Mr. Belton for weapons but placed his hand on Mr. Belton's waist area when he got out of the car and then removed the sandwich bag.

In the Court's analysis, this case rises or falls on whether there was probable cause to arrest Mr. Belton when he got out of the Avalon. The Court finds that the totality of the circumstances supported probable cause for the arrest of Mr. Belton at that moment and, therefore, Officer Joseph's removal of the plastic bag in his waistband. It is well settled that law enforcement may search an arrestee's person incident to a lawful arrest. *See Agnello v. United States*, 269 U.S. 20, 30 (1925) ("The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody is not to be doubted."); *see also Robinson*, 414 U.S. at 225-26 ("[I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment.").

The fact that the search momentarily preceded the formal arrest does not change the result. *See Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa."); *United States v. Powell*, 483 F.3d 836, 839-41 (D.C. Cir. 2007); *United States v. Riley*, 351 F.3d 1265, 1269 (D.C. Cir. 2003) (finding that where the police had probable cause to arrest defendant, "[i]t is of no import that the search came before the actual arrest"). Officer Joseph had probable cause, based on the totality of the circumstances, to arrest Mr. Belton after he observed the plastic protruding from his groin, in a car with heavily-tinted windows, and in an area previously known

to the officer for drug activity.  Therefore, Officer Joseph's removal of the plastic bag from Mr.

Belton's waistband constituted a search incident to a lawful arrest supported by probable cause.

Mr. Belton was the driver of the Avalon, which entitled the police officers to

search the passenger compartment of that vehicle incident to his lawful arrest.  *See New York v.*

*Belton*, 453 U.S. 454, 460 (1981) ("[W]hen a policeman has made a lawful custodial arrest of the

occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the

passenger compartment of that automobile.").

## IV.  CONCLUSION

Because the Court finds that there was probable cause to arrest Mr. Belton under

the totality of the circumstances, the contraband (drugs, gun, ammunition, and money) will not

be suppressed.  The search incident to lawful arrest doctrine extends to the passenger

compartment of the vehicle Mr. Belton was driving, in which the gun and ammunition were

found.  The drugs, money, gun, and ammunition will be admissible at trial.  The Motion to

Suppress Tangible Evidence, Dkt. 6, will be denied.

A memorializing Order accompanies this Memorandum Opinion.

Date: February 15, 2019

_____
ROSEMARY M. COLLYER
United States District Judge